## MITCHELL & a. v. HOLDERNESS & a.

If a road commissioner is interested in the result of a petition for a highway, he is incompetent to sit in the case.

The interest to exclude a road commissioner from sitting in a case must be such as the court can see.  It must be a direct interest, and not a remote or supposed advantage or disadvantage.

Where a road commissioner resided in a town adjoining that through which the highway prayed for was to pass, and it was alleged that such town, although not a party to the record, might be liable eventually, under the statute, to contribute towards the construction of the highway, and that, therefore, the commissioner was incompetent to sit upon any question in the case—*held*, that the commissioner was not disqualified until the question of the liability of such town should properly and legally arise before the board, which was not ordinarily the case till after the board had decided to lay out the highway, unless such town was a party to the original application for the highway.

Where a board of road commissioners had made known their determination to lay out a highway, and the towns through which it passed then moved that one of the towns in the vicinity, in which the chairman of the board resided, should bear a part of the expense of constructing the highway—*held*, that the chairman was incompetent to sit upon that question, but that a substitute might be appointed to take his place, and that the board, thus organized might complete the proceedings.

PETITION for a highway in the towns of Holderness and Bridgewater, in this county, across the Pemigewassett river.

The petition was referred to the road commissioners, at

the May term of the court of common pleas, 1852. All parties were duly notified, and a hearing was appointed at Holderness, June 23d, 1852; at which time and place the respective parties met, and the hearing was adjourned from time to time, until August, 1853, when the hearing was closed, and the highway prayed for laid out.

The highway, at its western terminus in Bridgewater, is situated very near the line of the town of Plymouth, and evidence was offered at the hearing tending to show that Plymouth would be considerably benefitted by its construction. The chairman of the board was a resident of Plymouth, having become such after the first hearing, and before August, 1853, when the hearing was closed.

Prior to the commencement of the hearing, in August, 1853, the town of Holderness objected to the chairman's sitting in the case, because he then resided in Plymouth, a town in the vicinity of Holderness, and, as was alleged, would be greatly benefitted by the road prayed for, and liable by statute to contribute to its construction. But as Plymouth had not been notified, and was not a party to this hearing, the objection was overruled. After the hearing was closed, and the commissioners had made known their decision to lay out the road, the towns of Holderness and Bridgewater submitted the following motion, in writing, to the board, to wit:

" The towns of Holderness and Bridgewater now move the road commissioners for the county of Grafton, to whom was referred the petition of George W. Mitchell and others for a highway in said towns, and who have laid out the same over Pemigewassett river, within said towns, that the town of Plymouth be ordered by you to contribute a proportion of the expenses of erecting the bridge and highway aforesaid. Said towns of Holderness and Bridgewater allege that the whole burden of building said highway and bridge is greater than they ought to bear, and that said town

of Plymouth would be greatly benefitted by said bridge and highway."

But inasmuch as the chairman was resident in Plymouth, and incompetent to act in issuing any notice to Plymouth, or sitting upon any hearing in which that town might be a party, the above motion was not entertained, but the questions were saved and transferred to this court for determination.

*Quincy* and *Burrows*, for the towns.

We contend that the chairman of the road commissioners was interested in the petition, and should not have served. Comp. Stat. ch. 53, § 6; Laws of 1846, ch. 353, as amended by laws of 1850, ch. 996; Comp. Stat. ch. 55; Laws of 1850, ch. 958.

The consideration of every petition for a new highway, referred to road commissioners since June session, 1850, necessarily involves the question whether towns in the vicinity of those through which the highway may be laid, will be benefitted by its construction, and should bear a portion of its expense.

The case finds that the town of Plymouth was in the vicinity of the highway. The chairman of the road commissioners, therefore, as a resident of Plymouth, was directly interested in this question, and by express provision of the statute should not have served.

The objection was seasonably made by the town of Holderness.

One of the board being interested, the proceedings were without authority. *Palmer* v. *Conway*, 2 Foster's Rep. 144.

*Sargent* and *Leverett*, for the petitioners.

We contend, 1. That the chairman of the board of road commissioners was not interested in the question of laying out the highway. His interest, if he had any, was only as

an inhabitant of Plymouth, which town can only be interested in a subsequent question, which can only arise after the question of laying out is settled.

His interest, if any, was doubtful and contingent, and not such as would disqualify him from acting on the question of laying out.

2. If the chairman had any interest, even a contingent, uncertain one, that interest was in favor of the defendants, and would lead the commissioner, if it influenced him at all, to decide against laying out the highway, as in that case Plymouth could not be made liable in any event. If there is any interest that could disqualify him, which we deny, the petitioners alone could take the exception, which they have not done.

3. As to the application which was made, after the road was laid out, to have the other question settled as to the liability of Plymouth, the defendant towns lose nothing, if the chairman is interested in that question, because a new commissioner may be appointed by the court, or any justice thereof, to hear and decide that question, at any time when the same shall arise. Comp. Stat. ch. 55; *Ib.* ch. 53, § 6; Pamphlet Laws, ch. 1420, p. 1347.

EASTMAN, J. A member of a board of road commissioners cannot be excluded from acting as such on the ground of interest in the result, unless the alleged interest shall appear plain and direct. Unless he may be liable, by taxation, to contribute to the making of the road, or his property is so situated as to make it clear that his pecuniary interests are to be affected by the decision of the commissioners, he cannot be excluded on the ground of interest.

The fact that a commissioner may reside in a town adjoining that through which the road is to pass, and the inhabitants of which, it may be supposed, will acquire an indirect advantage or receive an indirect injury, by the laying out

Mitchell v. Holderness.

of the road, might, under some circumstances, induce a com-
missioner to decline acting in the case; and a like supposi-
tion, in regard to himself, might be a still stronger reason
for him to withdraw from the board; still, any such sup-
posed advantages or disadvantages would not disqualify
him from sitting on the application, if he thought proper so
to do.   If not personally interested in advancing or retard-
ing the objects of the petition, or related to the parties, or
liable in any way to contribute to the making of the road
prayed for, he is competent to sit, so far as any objection on
the ground of interest can be raised.   In some of the small
counties, if the road prayed for was to run through several
towns, it might sometimes be difficult to organize a suita-
ble board of road commissioners, without affecting supposi-
titiously the interests of some of the board.   But an honor-
able man would let no such considerations affect him.   If
swayed at all by such influences, it would be to go against
his supposed interest.

Under the statute of July 8, 1850, ch. 958, Pamphlet
Laws or Comp. Stat. ch. 55, by which towns in the vicinity
of those through which a road is to pass are made liable to
bear a part of the expense of laying out and building such
highways, the question of the apportionment of the expense
to such towns does not, ordinarily, arise until after the com-
missioners have decided that the public good requires the
road to be made.   Until the towns in the vicinity are in
some way made parties to the proceedings, so as to have
their liability considered, the only question before the com-
missioners is, whether the road is demanded for the public
accommodation.   Such was the opinion of the court as ex-
pressed at the present term in Strafford county, in the case
of *Webster & a.* v. *Alton and New Durham*, (*ante*, 369,) in
which the construction to be put upon this statute was
somewhat fully considered.

As soon as the question properly arises before the road
commissioners, whether an adjoining town shall contribute

to the making of the highway, a member of the board re-
siding in such town becomes interested, and can legally act
no further in the premises.　He is incompetent, both upon
general principles and by express provision of the statute.
Pamph. Laws, ch. 1420.　But his doings up to that time
are not thereby rendered void or illegal, and there is no im-
practicability in his serving thus far and in appointing a
substitute to act, in connection with the other members of the
board, in passing upon the question whether the town shall
or not be charged with a portion of the expense.　Indeed,
the act of June 30th, 1853, would seem to have been passed
to reach just such and similar cases ; for it provides that if
any road commissioner shall be interested in any matter
whatever, he shall not serve, and the vacancy may be filled
at any time, by any judge of the superior court or judge of
the court of common pleas in the county in which the mat-
ter arises.　Pamphlet Laws, ch. 1420.

　　The chairman of the board of road commissioners, in this
case, was not, then, incompetent to serve upon the petition
*for the road.*　He was *not* a resident of either of the towns
through which it was to pass, and nothing is disclosed in
the case showing that he was in any way legally interested
in the question of laying the road.　Plymouth was not a
party to the original application, and the question of the
liability of that town appears not to have been at all con-
sidered by the commissioners.　But after the commissioners
had decided to lay out the road, and the counsel for the
towns through which it passed, moved that Plymouth, the
residence of the chairman, should be charged with a part of
the expense, he became directly interested in the future pro-
ceedings, and of course incompetent to act.　Until then,
however, he was competent.

　　The fact, that evidence was introduced in the progress of
the hearing, tending to show that Plymouth would be con-
siderably benefitted by the making of the road, did not make
him interested.　Such evidence might with propriety be in-

troduced on the question of the necessity of laying the road, as showing the extent to which the public would be benefitted by its construction; and evidence of that character is often introduced upon hearings for highways. But it does not thereby follow that the towns through which the road is to pass, will, in the language of the statute, be excessively burdened by defraying all the expenses of its construction, and that the towns in the vicinity will be greatly benefitted. Both of these facts must exist before a portion of the expense can be ordered to be defrayed by the towns in the vicinity. And they are not subjects that require to be investigated till the commissioners have decided to lay the road.

It appears to us, also, that there is an inherent difficulty in pronouncing the doings of this commissioner invalid. The statute speaks of the towns " in the vicinity," as being liable to contribute. To what extent is this to go so as to exclude a commissioner ? Where is the vicinage to terminate ? Who are to fix limits ? And is a party, by raising this question at the outset, before the merits of the petition for the road have been considered, to have it in his power to exclude a commissioner, when the town in which he resides is not a party to the record ? These are questions that are at once suggested when we depart from the construction that we have put upon the statute, and from the principle that it is a direct interest, and not a remote or supposed advantage, that shall exclude a commissioner from acting.

As the chairman of this board was competent to act in the laying out of this highway, and the doings of the board appear to have been complete and definite, so far as they went, we see no objection to the appointment of some one to act upon the question presented by the counsel for the towns, as a substitute for the member of the board residing in Plymouth. And the board thus organized will decide whether Plymouth shall defray a portion of the expense of constructing the road or not.

The opinion, therefore, to be certified to the common pleas, will be, that a commissioner may be appointed as a substitute for the chairman.